**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0789-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SUZETTE HINDS-MOHAMMED,

    Defendant-Appellant.

_____

Submitted May 2, 2017 — Decided May 25, 2017

Before Judges Yannotti and Fasciale.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Indictment No.
06-12-0973.

Joseph E. Krakora, Public Defender, attorney
for appellant (Kimmo Abbasi, Designated
Counsel, on the brief).

Michael H. Robertson, Somerset County
Prosecutor, attorney for respondent (James L.
McConnell, Assistant Prosecutor, of counsel
and on the brief).

PER CURIAM

Defendant Suzette Hinds-Mohammed appeals from an order

entered by the Law Division on March 26, 2015, denying her petition

for post-conviction relief (PCR) without a hearing. We affirm.

Defendant was charged with first-degree attempted murder of Devon Robinson, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). Defendant was tried before a jury.

At the trial, the State presented evidence, showing that defendant and Robinson had a romantic relationship that dated back to 1999. The relationship deteriorated when defendant suspected Robinson was involved with other women. In October 2006, defendant confronted Robinson with her suspicions, and dumped a jug of water on him. Two days later, Robinson obtained a temporary restraining order against defendant, which barred her from his apartment and imposed other restraints. Defendant moved to a hotel.

Several days later, defendant called Robinson and asked to meet him. She met Robinson and told him she needed money. They went in defendant's car to look at an apartment in Somerville that defendant wanted to rent. On the way there, defendant apparently became lost. She got off the highway and parked briefly in a dark alley. Defendant re-entered the highway and exited at a scenic overlook. Defendant told Robinson she needed to use the restroom. She got out of the car. The area was otherwise empty.

Defendant returned to the car and asked Robinson to open the rear hatch. She approached Robinson on the passenger side to ask

for tissues. Robinson turned to the center console and then turned back toward defendant. Defendant shot Robinson in the right side of his head. According to Robinson, defendant said, "you won't fuck me over anymore." Robinson reached for the gun, and defendant shot him again in the hand.

Robinson managed to exit the car. He wrestled defendant to the ground and gained control of the gun. He ran to the car and got into the driver's seat. Defendant also entered the car. Robinson took the car keys and gun and started to walk down the incline to the highway.

Defendant followed him. Robinson called 9-1-1 to report the shooting and dropped the gun in the process. He saw defendant trying to flag down passing cars. Robinson got back into the car and drove to a hospital. The trauma surgeon determined that one bullet had entered Robinson's right ear, traveled downward, and lodged in his jaw. The bullet could not be removed without the risk of causing serious damage.

A police officer, responding to a report that someone was walking along the highway, found defendant crouched behind a guardrail on the highway. She waved the officer down. The officer handcuffed and frisked defendant. He asked if she was injured and

inquired about the location of the gun. The officer informed defendant of her <u>Miranda</u> rights.[1]

Defendant was transported to the police station and again informed of her <u>Miranda</u> rights. She waived those rights and gave a statement to the investigating officers. She gave an account of the shooting that differed from Robinson's account. She stated that she had been driving with Robinson and stopped at the scenic overlook to use the restroom. According to defendant, as they exited the car, Robinson choked and punched her.

Defendant said she tried to get back into the car, and Robinson tried to force her out. She pulled the gun from the glove compartment and shot Robinson. The fight continued. Robinson kicked and punched her while trying to take the gun. Robinson grabbed the gun and walked away, as defendant fled down the incline.

Defendant stated that she obtained the gun at a gun shop, while she was residing in Georgia. She said she purchased the gun for her protection. She kept the gun in a leather storage bag in the glove compartment of her car, where it remained unused until the night of the shooting.

---

[1] <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 86 <u>S. Ct.</u> 1602, 16 <u>L. Ed.</u> 2d 694 (1966).

On the driveway leading to the scenic overlook, the police located a .22 caliber, five-shot, single-action revolver with three spent cartridges and two live rounds. The leather storage bag for the gun was later recovered from underneath the driver's seat in the car.

At the trial, defendant repeated the account that she provided to the investigating officers. She said Robinson had repeatedly asked her to marry him to avoid deportation, and on the night of the shooting, they argued over her refusal to marry him. She also claimed that when Robinson attacked her, he accused her of allowing him to be deported.

Robinson denied ever asking defendant to marry him. He said defendant had proposed to him, but he rejected the proposal after he spoke with an immigration attorney, who told him that getting married would not help him with his immigration issues. Robinson's immigration attorney testified that Robinson had been a lawful resident of the United States since the 1980s, and he had a valid defense to his deportation under the immigration laws.

The jury evidently credited the State's proofs, rejected defendant's claim of self-defense, and found defendant guilty of attempted murder and the weapons charges. The judge sentenced defendant for the attempted murder to fifteen years of incarceration, subject to the eighty-five percent period of parole

ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and imposed a concurrent seven-year prison term for the second-degree weapons offense.

Defendant appealed from the judgment of conviction dated June 28, 2010. We affirmed defendant's convictions and the sentences imposed. State v. Hinds-Mohammed, No. A-2429-10 (App. Div. Oct. 16, 2012). Thereafter, defendant filed a petition for certification with the Supreme Court. The Court denied the petition. State v. Hinds-Mohammed, 213 N.J. 538 (2013).

On July 15, 2013, defendant filed a pro se petition for PCR. The trial court assigned counsel to represent defendant, and counsel filed an amended PCR petition, alleging that defendant had been denied the effective assistance of trial counsel. Defendant sought an evidentiary hearing on the petition.

The PCR court filed a written opinion and order dated March 26, 2015, in which the court concluded that defendant had not presented a prima facie claim of ineffective assistance of counsel, and defendant was not entitled to an evidentiary hearing on the petition. This appeal followed.

On appeal, defendant raises the following argument:

> THE PCR COURT ERRED IN DENYING HINDS-MOHAMMED AN EVIDENTIARY HEARING, DESPITE THE FACT THAT SHE DEMONSTRATED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

A-0789-15T1

We have thoroughly reviewed the record and conclude that defendant's arguments are without sufficient merit to warrant extended discussion. R. 2:11-3(e)(2). We affirm the order denying PCR substantially for the reasons stated by the PCR court in the opinion dated March 26, 2015. We add the following comments.

A hearing on a PCR petition is only required when a defendant establishes "a prima facie case in support of [PCR]," the court determines that there are disputed issues of material fact "that cannot be resolved by reference to the existing record," and the court finds that "an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 355 (2013) (noting that under Rule 3:22-10(b), an evidentiary hearing on a PCR petition is only required when a defendant presents a prima facie case for relief).

As stated previously, defendant raised a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must meet the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). The first prong of the Strickland test requires a defendant to show that his or her attorney's performance was deficient. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

To do so, a defendant must establish that counsel's alleged acts or omissions "were outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

To satisfy the second prong of Strickland, the defendant "must show that the deficient performance prejudiced the defense." Ibid. The defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

Here, defendant claims her trial attorney was deficient because counsel: failed to effectively cross-examine the State's witnesses; did not object to the parties' history of domestic violence; failed to retain an expert; did not object to the State's use of a mannequin to demonstrate how the shooting took place; did not object to the testimony of Robinson's immigration attorney; and failed to object to the alleged "net opinion" by the State's expert witness, Dr. Howard Gilman.

The PCR judge rejected these claims. The judge found that defense counsel's cross-examination of the State's important

witnesses was "comprehensive and systematic." The judge determined that defense counsel's use of the parties' history of domestic violence was a trial strategy that allowed defense counsel to attempt to show that "defendant was right to fear the victim and [support] the defendant's argument that she acted in self-defense."

The judge rejected defendant's claim that trial counsel was deficient because he did not retain a forensic, ballistic, or medical expert to counter the testimony of Dr. Jaroslaw W. Bilaniuk, Robinson's treating surgeon, with regard to the location of the shot and the likelihood it would result in death. The judge noted that there was overwhelming evidence presented by the State's two expert witnesses concerning the trajectory of the bullet, which was corroborated by a CAT Scan.

The judge observed that it would have been "very difficult" for defense counsel to retain an expert to counter the testimony of the State's experts. Furthermore, because the experts' testimony largely corroborated Robinson's version of the events, the judge found that it was a reasonable trial strategy for defense counsel to argue instead that the "use of deadly force was needed in self-defense."

The judge also rejected defendant's claim that her attorney erred by failing to object to the use of the mannequin to

demonstrate how the shooting occurred, and by using the mannequin in support of the defense case. The judge noted that in defendant's direct appeal, we rejected defendant's contention that the State's use of the mannequin was improper. Hinds-Mohammed, supra, No. A-2429-10 (slip op. at 17-18). The judge pointed out that defense counsel had used the mannequin in an attempt to prove that Robinson took the gun from defendant and used it to fire at her.

In addition, the judge found that defense counsel did not err by failing to object to the testimony of Robinson's immigration attorney. The judge noted that it appeared there was no reason for defense counsel to object. The attorney's testimony was not hearsay because it was not offered for its truth. Moreover, the record indicates that the State presented the testimony to show that Robinson believed he would not gain any immigration benefit if he married defendant.

The judge further found that trial counsel's failure to object to the alleged "net opinion" of Dr. Gilman was not erroneous. The judge noted that Dr. Gilman's alleged improper opinion was provided in response to a question posed by defense counsel on cross-examination, not in response to a question on direct examination. The judge nevertheless stated that it appeared that Dr. Gilman did not offer a "net opinion."

A-0789-15T1

We are therefore convinced that the PCR judge correctly found that an evidentiary hearing was not required on defendant's petition. The record supports the judge's findings and his conclusion that defendant did not present a prima facie case of ineffective assistance of counsel. Moreover, there were no disputed issues of fact that the judge could not resolve by reference to the existing record, and an evidentiary hearing was not required to address defendant's claims. Porter, supra, 216 N.J. at 355 (citing R. 3:22-10(b)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0789-15T1